AO 91 (Rev. 5/85) Criminal Complaint                         AUSA Adrienne Rabinowitz

FILED by _____ D.C.

NOV 16 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

# United States District Court

<u>SOUTHERN</u> DISTRICT OF <u>FLORIDA</u>

UNITED STATES OF AMERICA

V.

STEVEN MICHAEL MAY, Jr.,
CHRISTOPHER WILLIAM COOK, and
JOSEPH JOHN VAQUERA

(Name and Address of Defendant)

## CRIMINAL COMPLAINT

CASE NUMBER: 06-8329 -AEV

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about <u>July, 2003</u> in <u>Palm Beach</u> _____ County, in the <u>Southern</u> District of <u>Florida</u> and elsewhere, the defendants (Track Statutory Language of Offense)

did devise a scheme or artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme or artifice or attempting to do so knowingly caused to be delivered by mail and private and commercial interstate carriers, mail matter.

in violation of Title _____ 18 _____ United States Code, Section(s) _1341_____.

I further state that I am a(n) <u>Special Agent, FBI</u> and that this complaint is based on the following

facts:

Please see attached Affidavit.

Continued on the attached sheet and made a part hereof: ☒ Yes    ☐ No

Signature of Complainant
Gary E. Hellmer, Jr., Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

November 16, 2006                                   at      Fort Pierce, Florida
Date                                                         City and State

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer                         Signature of Judicial Officer

*CRIMINAL COMPLAINT*

## AFFIDAVIT IN SUPPORT OF ~~SEARCH WARRANT~~

I, Gary E. Hellmer, Jr., being duly sworn, do hereby depose and state:

## INTRODUCTION

This affidavit is made in support of an application to search the following premises, as well as all outhouses, vehicles or other structures located within the curtilage of these premises: (1) 249 Florence Drive, Jupiter, Florida 33458, the residence of Steven Michael May, Jr.; (2) 1763 West Community Drive, Jupiter, Florida 33458, the residence of Joseph John Vaquera; and (3) Internet Mayhem, Inc., 401 Maplewood Drive, Jupiter, Florida 33458, a business operated by Steven Michael May, Jr.

I submit that this affidavit sets forth sufficient facts to establish probable cause to believe that Steven Michael May, Jr., Date of Birth: 10/26/69, Social Security No. 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 (hereinafter "May"), Joseph John Vaquera, Date of Birth 5/15/70, Social Security No. 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 (hereinafter "Vaquera") and Christopher William Cook, Date of Birth 3/19/81, Social Security No. 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 (hereinafter "Cook"), along with others known and unknown to me, are involved in a scheme to defraud and obtain money from retail businesses located throughout the United States, and for the purpose of executing such scheme or artifice or attempting so to do, knowingly caused to be delivered by mail or private or commercial interstate carrier, according to the direction thereon, mail matter, in violation of 18 U.S.C. §§ 1341. I further submit that items and documents which constitute the fruits, evidence and instrumentalities of these crimes exist and will be found at the above-listed premises.

## AFFIANT'S BACKGROUND

I am a Special Agent with the Federal Bureau of Investigation (FBI), currently assigned to the Resident Agency Office in West Palm Beach, Florida. I have been employed as an FBI agent for approximately nine years. I am currently assigned to investigate white collar crimes, including violations of the mail and wire fraud statutes. I have previously participated in the execution of numerous search warrants in a variety of white collar cases and am familiar with the records and documents maintained by individuals involved in such white collar crimes.

## SOURCE OF INFORMATION

The statements contained in this affidavit are based on my first hand knowledge and information provided to me by other law enforcement officers, witnesses, victims of the crimes discussed herein, and my review of relevant documents, including corporate records, financial documents, lease agreements, vendor records and other evidence developed during the course of this investigation. Because this affidavit is provided for the limited purpose of establishing probable cause for the search warrants, I have not included all aspects of this investigation in this affidavit, but rather have set forth only those facts that I believe are necessary to establish probable cause.

## BACKGROUND

This investigation involves a scheme devised by May, Vaquera and Cook to defraud retail businesses throughout the United States by establishing business lines of credit based on false and fraudulent financial information and then using the fraudulently obtained lines of credit to obtain assorted merchandise, including computer monitors, flat screen televisions, power tools, motorized scooters, and electronic equipment. Based on the evidence gathered to date, it appears that May and Vaquera then sell the fraudulently obtained merchandise at steep discounts on eBay. As a result of this scheme, May, Vaquera and Cook have defrauded over 30 businesses of more than $ 1.8 million.

## INFORMATION OBTAINED DURING THE INVESTIGATION

Beginning in approximately 2003, May, Vaquera and Cook (hereinafter referred to as the "targets") began incorporating businesses throughout the United States, including RML Corporation (RML), Next Step Consulting, Inc. (Next Step), Business Consulting International (BCIUS), SDG Solutions Corporation (SDG), Bradenton Falls Enterprises, Inc. (Brandenton Falls), Wave Datacom, Inc. (Wave Datacom), First Source Solutions, Inc. (First Source), and International Networks, Inc. (International Networks). It appears that the corporations did little or no actual business. The targets are typically listed as the officers of these corporations on the corporate documents and related business records. In some instances, their full names are listed; in other instances, only their middle and last names or first and last names appear. For example, "Steven M. May, Jr." was listed as the president of RML on the corporate documents, while "Mike May" was listed as the vice president on a Wave Datacom credit application. "Christopher W. Cook" was listed as the president of Wave Datacom on the corporate documents, while "William Cook" was listed as the registered agent and incorporator of Next Step. "John Vaquera" was listed as the incorporator on SDG's corporate documents, while "Joseph Vaquera" was listed as the registered agent on BCIUS' corporate documents.

Each of the companies (hereinafter referred to collectively as the "target companies") maintained a virtual office suite* in the state in which it was incorporated. The suites were used to receive shipments of merchandise, mail and telephone messages. Although the virtual office agreements allowed the targets to use office space and/or conference rooms, the targets rarely did so. Indeed, for the virtual offices located outside of Florida, the targets negotiated the rental of the virtual office suites by e-mail, telephone or facsimile and rarely appeared at the offices. The virtual office lease for RML was signed in the name "Steven May, Jr.," President and CEO. The virtual office lease for First Source was in the name "Michael May." The virtual office lease for BCIUS was in the name "Joseph Vaquera, President." The SDG virtual lease was signed in the name "John Vaquera." The International Networks virtual lease was in the name "Joe Vaquera." The virtual office lease for Next Step was in the name "William Cook, President." The two virtual office leases for Wave Datacom, one signed in 2003 and the second in 2005, were in the names "Christopher W. Cook" and "Chris Cook," respectively. The virtual office lease for Bradenton Falls was signed in the name "Ted Watkins," which we believe to be a fictitious name used by the targets.

-2-

\* A virtual office suite is a shared office where a tenant receives telephone service and mail privileges and occasional use of an office suite and conference room.

In September 2006, Agent Nestor Zaragoza, from the Jupiter Police Department and the Office of the State Attorney's Anti-Money Laundering Task Force, interviewed the office managers for 800 Village Square Crossing, Palm Beach Gardens, Florida, the office building where both RML and Brandenton Falls were located. The managers confirmed that both RML and Bradenton Falls had leased virtual office suites at the building. The virtual lease agreements allowed the companies to receive packages, mail and telephone messages and to use office space and/or conference rooms at the suites. Although neither company ever used the offices or conference rooms, they both received large packages and boxes at the office suites. The building manager, Keith Weller, informed us that RML leased Suite 304 from April 2003 through April 2004. During that period, RML received numerous boxes and packages at the suite, which were picked-up by a female named "Shannon." RML's lease was signed in the name "Steven May, Jr.," and most of the rental checks and money orders received for Suite 304 were signed in the name Steven May, Jr. Agent Zaragoza also spoke with Richelle Weller, another manager at 800 Village Square. Ms. Weller stated that Bradenton Falls leased Suite 312 from January 2005 through June 2005. Although the Bradenton Falls lease was signed in the name "Ted Watkins," Ms. Weller never met anyone by that name. All of her contacts concerning Suite 312 were with Joseph Vaquera. Vaquera picked-up all of the packages delivered to Suite 312 and paid all of the rental payments for the suite. Ms. Weller recalled that on one occasion 13 boxes of DeWalt power tools addressed to Bradenton Falls were delivered to Suite 312. Agent Zaragoza subsequently showed Ms. Weller a photo-lineup containing a photograph of target Joseph John Vaquera. Ms. Weller positively identified the photograph of Vaquera as the individual from Bradenton Falls with whom she dealt concerning Suite 312.

In September 2006, I interviewed Brenda Morrow, the general manager for Regus Group Network, a business which leases virtual office services at 777 Flagler Drive, Suite 800, West Tower, the corporate address for Wave Datacom. Ms. Morrow indicated that Christopher Cook, President of Wave Datacom, leased a virtual office at Suite 800, from May 2003 through October 2003, and from August 1, 2005 through June 1, 2006. The 2005 lease authorized Christopher Cook, President of Wave Datacom, and Mike May, Vice President of Wave Datacom, to use Suite 800. Ms. Morrow further stated that during the course of the 2005 lease, Wave Datacom received packages at Suite 800, and that during the last 60 days, they received an extraordinary number of packages. The packages were picked up by either Christopher Cook, or another individual. I showed Ms. Morrow a photo-lineup containing a photograph of target Christopher William Cook. Ms. Morrow positively identified the photograph of Cook as the individual from Wave Datacom with whom she dealt concerning Suite 800.

In September 2006, I obtained the leasing records for 600 17th Street, Suite 2800, Denver, Colorado, the corporate address for Next Step. The records reveal that Suite 2800 is a virtual office suite which was leased via the internet by "William Cook," President of Next Step, from September 2003 through March 2004. The leasing records further reflect that Next Step received numerous packages at suite 2800, which Cook directed them to ship using his Airborne Express account to 222 Lakeview Avenue, Suite 160, West Palm Beach, Florida, a UPS box leased by Cook.

I also obtained the leasing records for 3900 Jermantown Road, Suite 300, Fairfax, VA 22030,

the corporate address for SDG.  These records revealed that Suite 300 was a virtual office suite leased in the name of "John Vaquera," on behalf of SDG, from April 2004 through September 2004. The building manager informed U.S. Postal Inspector Kevin Towers that her contacts with SDG representatives were primarily through e-mail and facsimile.  She further stated that SDG received a large number of boxes at Suite 300, which they forwarded to a commercial mailbox located in Palm Beach Gardens, at the direction of SDG.

We also obtained leasing records for  3225 McLeod Drive, Suite 100, Las Vegas, Nevada, the corporate address for First Source.  These records reflect that Suite 100 is a virtual office which was leased in the name "Michael May," on behalf of First Source, from November 2005 through June 2006.  The office manager informed me that during the lease, numerous packages and boxes were delivered to Suite 100 for First Source.  These boxes were often heavy, weighing as much as 60 pounds.  The office managers were directed by "Michael May" and "Jack Weiss," the purported president of First Source, to ship the packages received at Suite 100 in care of Michael May, to either 4521 PGA Boulevard, #299, Palm Beach Gardens, Florida, a commercial mailbox leased by Joseph Vaquera, or 777 S. Flagler Drive, Suite 800, West Palm Beach, Florida, a virtual office suite leased by Christopher Cook.

In October 2006, I obtained the records related to 123 W. 1st Street, Suite 675, Casper, Wyoming, the corporate address for International Networks.  These records reveal that Suite 675 is an office suite leased by Guillermo Jalil.  Jalil informed me that he acts as a registered agent for numerous corporations, including International Networks.  Jalil entered into an agreement with International Networks in approximately September 2005, to serve as its registered agent in Wyoming and to receive mail and telephone messages for the company.  Jalil billed Joseph Vaquera, his main contact at International Networks, for his services.  On September 29, 2006, Jalil resigned as registered agent for International Networks because he was receiving too many complaint calls concerning the company.

After setting up the target companies, the targets applied, using e-mail and/or facsimile, for business-to-business lines of credit with numerous retail businesses throughout the United States, including Hammacher, Schlemmer & Co., Inc.; Plus Vision Corp. Of America; Cabela's Promotions, Inc.; L.L. Bean, Inc.; Micro Works Computer Center; Segway LLC; Basket Weaving 101; Sharper Image, Ricom, Inc.; Optimus Solutions LLC, and Mod Comp, Inc.  A full list of the victims identified to date and the losses they have sustained as a result of shipping goods on credit to the target companies is included in attached Exhibit 1.  To obtain credit, the target companies were required to provide the victim companies with financial information and trade and bank references.

When the targets provided the victim companies with trade references, they would typically provide the names of 2 - 3 related businesses, including other target companies or other companies incorporated by, controlled by and/or associated with the targets[1].  To date, our investigation has

---

[1] Based on my review of corporate documents and other business records obtained during the investigation, I determined that the targets incorporated, controlled and/or were associated

revealed that in most instances, the contact information for the purported trade references were addresses and telephone lines controlled by the targets. In this way, the targets were able to respond to credit inquiries by the victim companies.

Based on conversations with representatives of the victim companies and our review of their documents, we learned that the target companies typically provided the victim companies with an address, telephone number and facsimile number for each trade reference. Many of the facsimile numbers provided were controlled by the targets through E-Fax Plus Service (E-Fax), a California service which provides customers with access to facsimile numbers. Although E-Fax is located in California, they have access to facsimile numbers throughout the United States. When someone sends a fax to an E-Fax number, E-Fax receives the fax, converts it to an electronic document and then e-mails the document to the E-Fax customer.

Both Vaquera and May contracted with E-Fax for access to fax numbers with area codes throughout the United States. The targets used these fax numbers to receive credit reference forms sent by the victims to the purported trade references. For example, International Networks provided a victim company with three trade references. The fax number listed for each of the trade references was an E-Fax number assigned to Vaquera. Similarly, Next Step provided a victim company with a trade reference located in Raleigh, North Carolina. The fax number for this trade reference was an E-Fax number assigned to May. BCIUS provided a victim company with a trade reference located in North Carolina. The fax number for this trade reference was an E-Fax number assigned to May.

Many of the victim companies retained the credit reference forms purportedly completed and returned by the trade references. When I reviewed these forms, I observed that many of the forms had the same fax headers. For example, on March 2, 2005, one victim company faxed credit reference forms to Green Power Marketing Services, Inc., fax number 866-702-9271, and RML, fax number 703-814-8674, trade references supplied by Bradenton Falls. On March 4, 2005, the victim company received the completed credit reference forms via fax from both Green Power Marketing Services, Inc. and RML. Both faxes contained the identical fax header lines, except for slightly different times. (See attached Exhibit 2) In addition, many of the faxes received by the victim company from Bradenton Falls, including their request to place an order and their credit application, also contained this same fax header line. This evidence suggests that the faxes from Green Power Marketing, located in West Palm Beach, Florida; RML, located in Reston, Virginia; and Bradenton Falls, located in Palm Beach Gardens, Florida; all came from the same fax machine.

Similarly, on July 27, 2006, another victim company faxed credit reference forms to BDC, Inc., RIS, Inc., and NCC corporation, trade references provided by International Networks. The

---

with the following companies: USI Corporation; Greenway Corporation; Green Power Marketing Services, Inc.; Data Research Corporation; Solar Host LLC; GTC Corporation; Back Office Development; Solar Data Centers; Solarhost, Inc.; Fast Incorporators; Southern Equipment Sales; BDC, Inc.; RIS Inc.; and NCC Corporation.

completed credit reference forms received from all three companies had identical fax header lines, except for the time. Moreover, this was the same fax header which appeared on International Networks' list of trade references, again suggesting that all of these documents had been faxed to the victim company from the same fax machine.

On August 4, 2006, we did a "trash run" at May's residence. In May's trash, we recovered a "Request For Credit Reference" form sent to BDC, Inc. by Computer Design Center, LLC, in Branford Connecticut. The form states that International Networks applied for credit with Computer Design Center and listed BDC, Inc. as a credit reference. The form requested that BDC, Inc. fax certain financial information about International Networks. The bottom portion of the form containing financial information about International Networks was completed in pen. (See attached Exhibit 3.)

The target companies also provided bank references to the victim companies. Our investigation revealed that, in most instances, the names and addresses provided for the bank references were accurate, but the telephone and fax numbers were not. Many of the victim companies attempted to contact the bank references by telephone and usually reached voice messages. During the course of our investigation, we contacted the banks and learned that in almost all instances, the phone and fax numbers supplied by the target companies were not the true numbers for the banks. For example, International Networks provided several victim companies with the following bank reference: "Wells Fargo, 4141 E. 2nd Street, Casper, Wyoming, Phone: 307-473-1500, Fax: 307-459-0244, account #00104669048." We were informed by a Wells Fargo representative employed at that branch that there is in fact a Wells Fargo branch at that location, but the phone and fax numbers provided do not correspond to that branch or any branch of Wells Fargo.

In July 2006, a victim company faxed an account inquiry for International Networks to Wells Fargo, at the fax number indicated above. Even though the fax number was not assigned to Wells Fargo, the victim received a fax purportedly from Wells Fargo, confirming International Networks' account information. The fax was signed by a "Ray Jacobs." The Wells Fargo representative also informed us that the Wells Fargo branch located at 4141 E. 2nd Street, Casper, Wyoming, never employed an individual named Ray Jacobs and never had an account for International Networks. Morever, the fax header line on the fax purportedly received from Wells Fargo was identical to the fax headers we observed on trade reference letters received by other victim companies.

Bradenton Falls' bank reference was Chevy Chase Bank, Oxon Hill, Maryland. The fax number supplied by Bradenton Falls for Chevy Chase Bank was one of the fax numbers assigned to Vaquera through E-Fax Plus Service.

SDG's bank reference was "Riggs Bank NA, 950 Herndon Pkwy, Herndon, VA, Dwight Jackson Account Representative, 571-323-0753; Fax 571-323-0759." I was informed by Brenda Walters, Assistant Branch Manager at Riggs Bank, now known as PNC Bank, that there was a Riggs Bank branch located at 950 Herndon Parkway, but the telephone and fax numbers provided were not assigned to that branch. Moreover, she cannot recall a Dwight Jackson ever working at that branch.

The bank reference provided by First Source was Bank of America, Las Vegas, Nevada. I was informed by a Bank of America representative that the telephone and fax numbers provided by First Source do not match any numbers assigned to Bank of America and that First Source never had an account at Bank of America.

During the course of the investigation, we also reviewed some of the bank references which the victim companies had received via fax. I observed that some of the bank reference letters had the same fax headers as the trade reference letters and the credit applications prepared by the target companies. For example, the credit application submitted by Bradenton Falls, the trade reference letters purportedly returned by Green Power Marketing Services and RML, and the bank reference letter provided by Chevy Chase, all have the same fax header line.

In a few instances, the targets did open bank accounts in the name of the target companies. Specifically, Wave Datacom and RML both had bank accounts open for a period of time. In these instances, the targets provided the victim companies with correct contact information for the banks where the accounts were located.

I also reviewed many of the financial statements submitted by the target companies to the victim companies. These statements appeared to be completely made up in that there is no indication that any of the companies performed any legitimate business. In addition, many of the financial statements submitted by the target companies are virtually the same, with only several numbers on each statement differing. Moreover, the balance sheets submitted as part of the financial statements by SDG, Bradenton Falls and BCIUS were identical. (See Exhibit 4.)

Based on the fraudulent financial information received from the target companies, the victim companies extended credit to the target companies. The targets then placed orders for high-end merchandise, including computer monitors, flat screen televisions, Sony DVD camcorders, electronic equipment, Cisco catalysts, motorized scooters, GPS units, and power tools, and directed the victim companies to ship the merchandise to either virtual office suites, commercial mailboxes, or storage facilities controlled by the targets. Several of the target companies used the same shipping address. For example, BCI US, SDG and First Source all directed the victim companies to ship merchandise to 4521 PGA Boulevard, #299, a commercial mailbox leased by Joseph Vaquera. To conceal their involvement in the scheme and to frustrate the victim companies' efforts to locate them, the targets would sometimes have the victim companies ship merchandise to a commercial mailbox or virtual office located in one state and then have the commercial mailbox or virtual office immediately re-ship the goods to a different commercial mailbox, virtual office, or storage facility located in Palm Beach County. For example, First Source had a victim company ship merchandise to its virtual office in Las Vegas, and then had the virtual office re-ship the goods to 4521 PGA Blvd., #299 (Vaquera's commercial mailbox). In another instance, International Networks had a victim company ship merchandise to 301 Thelma Drive, Suite 218, Casper, Wyoming, a commercial mailbox leased by Vaquera, and then had the commercial mailbox re-ship the goods to 6231 PGA Boulevard, #104, (another commercial mailbox leased by Vaquera).

On September 11, 2006, Agent Zaragoza visited 6231 PGA Boulevard, a PAC Mail center. Agent Zaragoza was informed by Donna McCabe, the PAC Mail manager, that Joseph Vaquera leased mailbox #104 for Bradenton Falls. Vaquera had signed the lease and made the rental payments for this box. Ms. McCabe further stated that Vaquera received daily shipments at this box. Julie Adams, a PAC Mail employee, told Agent Zaragoza that two individuals, Vaquera and another male she knew as "Ted Watkins," would retrieve the packages from Box #104. On September 21, 2006, Agent Zaragoza showed a photo-lineup containing a photograph of target Joseph John Vaquera to Ms. McCabe, who positively identified the photo of Vaquera as the person who leased and made rental payments for Box #104. On this same day, Ms. Adams was shown two photo-lineups, one containing a photograph of target Steven Michael May, Jr., and a second containing a photograph of target Joseph John Vaquera. Ms. Adams identified both May and Vaquera as the individuals who regularly retrieved packages from Box #104. She added that May was the individual she knew as "Ted Watkins."

Beginning in 2006, International Networks directed most of its victim companies to ship merchandise to either 4151 Burns Road, Palm Beach Gardens, FL, or 11655 U.S. Highway One, Suites 1081 and 4002, North Palm Beach, FL. Both of these locations are storage facilities. May leased and made the payments on the Burns Road storage units; Vaquera leased and made the payments on the U.S. Highway One units.

On April 27, 2006, Agent Zaragoza visited the storage facility located at 4151 Burns Road. Agent Zaragoza observed numerous boxes stacked outside the office. The product name and serial number were printed on some of the boxes. Agent Zaragoza observed a box for a Scooba Floor Washing Robot, Serial Number JEN0590006010901132 and a box for a Sharper Image Ionic Breeze GP Purifier, Serial Number SI861, SKU number 360909. Agent Zaragoza recognized both products because he had seen these same items for sale on Vaquera's eBay site, sflliquidators.

Agent Zaragoza was informed by the manager of the Burns Road facility, Harold J. Mahnke, that the boxes stacked outside the office had been left for DHL pick-up by one of his customers, Steven May. Mr. Mahnke further stated that Steven May leased three storage units – 5001, 5002 and 5003 – at his facility. May regularly received boxes addressed to International Networks at these units, which May or another individual would pick-up. In most instances, May would take the boxes to one of his storage units and then return them to the office area a short time later with new shipping labels. May would tell the manager that the boxes were going to be picked up by an overnight mail service.

On August 9, 2006, Agent Zaragoza returned to the Burns Road storage facility where he observed four boxes inside the office. Mr. Mahnke informed him that these boxes had been delivered that day for International Networks. Agent Zaragoza observed that the boxes were for 30" Apple monitors and copied the serial numbers from each box. The next day, August 10, 2006, Agent Zaragoza returned to the Burns Road storage facility and observed the same 4 Apple monitor boxes, as well as other boxes, including DeWalt tool sets and additional Apple monitors, stacked outside the office. Mr. Mahnke informed Agent Zaragoza that May had left the boxes for pick-up by an

overnight mail service.  Agent Zaragoza observed that the boxes were addressed to individuals located outside Florida.

We subsequently traced the serial numbers for the four 30" Apple monitors and determined that they had been ordered by International Networks on August 8, 2006, from one of the victim companies. International Networks had ordered the monitors on credit and failed to pay when billed by the victim company.

On September 21, 2006, Agent Zaragoza showed a photo-lineup containing a photograph of target May to Mr. Mahnke, who positively identified the photograph of May as the individual who leased and retrieved packages for units 5001, 5002 and 5003.

In October 2006, Agent Zaragoza interviewed Susan Walker, the manager at the U.S. Highway One storage facility.  Ms. Walker informed Agent Zaragoza that Joseph Vaquera leased two units, 1081 and 4002, both of which regularly received shipments addressed to International Networks.  According to the manager, International Networks' deliveries included DeWalt tool sets, Black and Decker items, Apple monitors, and Cisco systems.  At Vaquera's direction, the manager would put all deliveries for International Networks into Vaquera's storage units, and Vaquera would subsequently retrieve them from the units.  On September 21, 2006, Agent Zaragoza showed a photo-lineup containing a photograph of target Vaquera to Ms. Walker, who positively identified the photograph of Vaquera as the individual who leased and made rental payments for units 1081 and 4002.

At or around the time the merchandise was shipped, the victim companies sent invoices to the target companies requesting payment.  The targets never remitted any payments to the victim companies.  Instead, the target companies would ignore the billing notices or send "lulling" e-mails in which they promised to pay the bills; however, no payments were ever made.

To date, we have determined that as a result of this scheme, the targets have defrauded approximately 34 companies of approximately $ 1.8 million.

During the investigation, we discovered that May and Vaquera maintained seller accounts on eBay.  May had three accounts: michael _solar, smmayjr, and internetmayhem; Vaquera had two accounts: josephbci and sflliquidators.  Beginning in approximately September 2004, May and Vaquera began selling the same types of merchandise which were obtained from the victim companies on their eBay sites.  The merchandise was typically advertised as "Brand New, Never Opened, Never Used."  A review of records obtained from eBay reveals that the items sold by May and Vaquera included the following, Sony DVD camcorders, GPS units, DeWalt power tools, digital cameras, computer monitors, telephones, and flat screen televisions.  When we compared the model and make numbers from the victim companies' invoices with the model and make numbers from the eBay records, we observed that at or around the time the victim companies shipped merchandise to the targets, the same items were posted for sale on May's and Vaquera's eBay sites.

-9-

For example, on approximately December 29, 2003, BCIUS ordered five PLUS U2-1200 projectors, $2,795 each, on credit, from PLUS Vision Corporation, in Beaverton, Oregon. On December 30, 2003, these items were shipped to BCIUS, Inc., Joseph Vaquera, 3 Bethesda Metro Center, Suite 700, Bethesda, Maryland, the virtual office for BCIUS. On January 26, 2004, Vaquera sold this same item on eBay, advertised as "brand new," under his seller account josephbci.

Similarly, on approximately August 10, 2006, International Networks ordered twelve N3260W Viewsonic 32" widescreen televisions, $980 each, on credit, from CCS Presentation Systems, in Houston, Texas. On August 11, 2006, CCS Presentation Systems shipped these items to International Networks, at 11655 U.S. Highway One, Suite 4002, North Palm Beach, Florida. On September 22, 2006, May sold this same item on eBay, advertised as "brand new, never opened, never used," under his seller account internetmayhem.

In early 2005, the Jupiter Police received complaints from 9 eBay customers who had purchased merchandise from Vaquera's eBay account – sflliquidators. The customers had purchased merchandise, sent checks or money orders payable to Joseph Vaquera, Post Office Box 24, 812C Old Dixie Highway, Jupiter, Florida, and never received any merchandise. Agent Zaragoza visited 812 C Old Dixie Highway and learned that the location was a check cashing store operated by Any Kind Check Cashing ("Any Kind"). Any Kind also leased post office boxes. After speaking with the managers of Any Kind and reviewing the leasing records for Box 24, Agent Zaragoza learned that Box 24 was leased to Steven May, in the name of Mass Liquidators. The leasing documents further reflect that Steve May, Joe Vaquera and Chris Cook were all authorized recipients for Post Office Box 24. Agent Zaragoza then obtained copies of the checks and money orders sent by the 9 eBay customers to Post Office Box 24. All of them had been cashed by Vaquera at Any Kind. The Any Kind records further revealed that between July 2003 and March 2006, Vaquera cashed $446,648.38 in checks and $8,971.25 in money orders at Any Kind; and between June 2003 and January 2006, Steven May cashed $526,694.52 in checks and $23,496 in money orders at Any Kind. Almost all of the checks and money orders were cashed at the 812C Old Dixie Highway store; a few were cashed at the Lake Park store. According to the check printouts provided by Any Kind, most of the checks and money orders cashed by May and Vaquera were from individuals and/or businesses. According to the actual checks produced by Any Kind for several months in 2006, most of the checks cashed by Vaquera and May contain item names or eBay numbers in the memo section, confirming that they were payments for eBay purchases.

On June 9, 2005, Agent Zaragoza showed a photo-lineup containing a photograph of target Vaquera, to Riad Abdellah, the manager of Any Kind. Mr. Abdellah positively identified Vaquera as the individual who regularly retrieved letters from Box 24.

**LOCATIONS TO BE SEARCHED**

249 Florence Drive, Jupiter, Florida 33458 (Residence of Steven Michael May, Jr.)

Based on records obtained from eBay/PayPal and surveillance conducted during the course

found at the following premises and/or outhouses, vehicles or other structures located within the curtilage of these premises: (1) 249 Florence Drive, Jupiter, Florida 33458, the residence of Steven Michael May, Jr.; (2) 1763 West Community Drive, Jupiter, Florida 33458, the residence of Joseph John Vaquera; and (3) 401 Maplewood Drive, Jupiter, Florida 33458, the location of Internet Mayhem, and that search warrants should be issued authorizing the seizure of such evidence.

11/16/06

FURTHER AFFIANT SAYETH NAUGHT.

Gary E. Hellmer, Jr.
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me
this _16_ day of November 2006..

US Magistrate Judge
WPB

-12-

## BOND RECOMMENDATION

### JOSEPH JOHN VAQUERA
**Defendant**

Pretrial Detention is recommended as to defendant.

_____
ADRIENNE RABINOWITZ
ASSISTANT UNITED STATES ATTORNEY

## BOND RECOMMENDATION

### CHRISTOPHER WILLIAM COOK
**Defendant**

Pretrial Detention is recommended as to defendant.

ADRIENNE RABINOWITZ
ASSISTANT UNITED STATES ATTORNEY

# BOND RECOMMENDATION

## STEVEN MICHAEL MAY, Jr.
**Defendant**

Pretrial Detention is recommended as to defendant.

_____
ADRIENNE RABINOWITZ
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.   06- ⟨⟩⟨⟩ -AEV

**UNITED STATES OF AMERICA**

**v.**

**STEVEN MICHAEL MAY, Jr., et. al.,**

**Defendant.**

_____/

## CRIMINAL COVER SHEET

1.    Did this case originate from a matter pending in the United States Attorney's Office prior to April 1, 1999?    ____ Yes    _X_ No
If yes, was it pending in the Central Region?
___ Yes ____ No

2.    Did this case originate from a matter pending in the United States Attorney's Office prior to April 1, 2003?    ____ Yes    _X_ No

3.    Did this case originate from a matter pending in the Narcotics Section (Miami) of the United States Attorney's Office prior to May 18, 2003?    ____ Yes _X_ No

4.    Did this case originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?    ____ Yes _X_ No

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

BY:    _____
ADRIENNE RABINOWITZ
ASSISTANT UNITED STATES ATTORNEY
FL Bar No. 833754
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
TEL (561) 209-1039
FAX (561) 659-4526
adrienne.rabinowitz@usdoj.gov